UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CONTROL TECHNOLOGY & SOLUTIONS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 4:21-cv-686-MTS |
| OMNI ENERGY PARTNERS, LLC, *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion to Dismiss, Doc. [9], Plaintiff's Complaint, Doc. [3], pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies Defendants' Motion.

**I.   BACKGROUND**

Plaintiff Control Technology & Solutions, LLC's ("CTS" or "Plaintiff") brings this action against Defendants Omni Energy Partners, LLC ("Omni"), Mark Graves, Scott Graves,[1] Jim Thurman,[2] Brandon Little,[3] and Ryan Moats[4] (collectively, "Defendants") for several alleged wrongful acts including copying Plaintiff's confidential and proprietary materials and stealing Plaintiff's employees, clients, and business opportunities.

CTS is a company that provides energy efficient solutions and performance contracting,

---

[1] Scott Graves served as CTS's sales representative and had access to CTS's Trade Secrets. Doc. [3] ¶ 25.

[2] Jim Thurman served as CTS's project coordinator, engineer, and Director of Engineering and had access to CTS's Trade Secrets. Doc. [3] ¶ 28.

[3] Brandon Little served as CTS's Project Developer and had access to CTS's Trade Secrets. Doc. [3] ¶ 31.

[4] Ryan Moats served as CTS's Project Manager and Project Engineer and had access to CTS's Trade Secrets. Doc. [3] ¶ 34.

1

design-build, and system integration to help reduce energy and operational costs for its clients, that include school districts, local and federal government buildings, and healthcare providers. Doc. [3] ¶ 14.  Plaintiff employed Defendant Mark Graves from November 2005 to December 16, 2020. During his time at CTS, Defendant Mark Graves served as CTS's primary sales representative and head of business development and had access to CTS's Trade Secrets.[5]  Plaintiff alleges that on or about December 16, 2020, Defendant Mark Graves left CTS and formed Defendant Omni, a direct competitor of CTS.

Plaintiff alleges Defendant Mark Graves recruited his co-workers (the other individual Defendants) to join him in his new business endeavor; the individual Defendants left CTS to join Defendant Omni, and each had access to CTS's Trade Secrets and proprietary information. According to Plaintiff, while the individual Defendants were still employed by CTS, they prepared for Defendant Omni's business ventures while using CTS's resources and building proposals akin to Plaintiffs.  *Id.* ¶ 37.  Plaintiff alleges that Defendants attempted to solicit Plaintiff's clients and business opportunities while still working for Plaintiff.  As an example, Plaintiff alleges that Defendant Mark Graves purposely bid on smaller projects—while working for CTS—with school districts in an attempt to work with the same districts on much larger projects at his new company. *Id.* ¶ 38.  Currently, Plaintiff alleges, many of Defendants' clients and contractual relationships with the clients are the same as CTS's, such as these school districts.  *Id.* ¶¶ 39–41, 45.  Defendants also allegedly made several false statements and misrepresentations regarding the status of Plaintiff's business, employees, and abilities in order "to harm the business interests of [Plaintiff] and drive customers and clients to Defendants."  *Id.* ¶¶ 50–51, 61, 75, 90–91, 93–95.  Plaintiff alleges Defendants exchanged emails with each other while still working at CTS outlining their

---

[5] Plaintiff defines "Trade Secrets" as proprietary and confidential information, documents, processes, marketing materials, and procedures for carrying out its business.  Doc. [3] ¶ 15.

2

plans to move business away from Plaintiff. *Id.* ¶ 110.

In carrying out Defendant Omni's business, the individual Defendants allegedly have used, and continue to use, CTS's Trade Secrets, proprietary materials, and materials that are also subject to copyright protection. *Id.* ¶¶ 43, 100, 110. Defendants allegedly submitted proposals to the school districts that contained CTS's "Trade Secrets," including content in the same layout and format, and used the same language as CTS uses in its own proposals. *Id.* ¶¶ 44, 47. According to the Complaint, Defendants' copying is so prevalent that in many instances Defendants failed to remove the documents' internal references to CTS. *Id.* ¶ 45. Plaintiff also alleges that Defendants misrepresented Plaintiff's work as their own work and "palm[ed] off" Plaintiff's "good name and accomplishments." *Id.* ¶¶ 46, 50, 90–91, 116.

Based on Defendants alleged conduct, Plaintiff filed a nine-count Complaint asserting: (1) Trade Secret Misappropriation in Violation of the Missouri Uniform Trade Secret Act (Count I); (2) Missouri Common Law Unfair Competition, Mo. Rev. Stat. § 417.450 (Count II); (3) Unjust Enrichment (Count III); (4) Tortious Interference with Business Expectancy (Count V (sic)); (5) Breach of Duty of Loyalty (Count VI); (6) Injurious Falsehood (Count VII); (7) Common Law Copyright Infringement (Count VIII);[6] (8) Conspiracy (Count IX); and (9) Temporary Restraining Order and Preliminary and Permanent Injunction (Count X). Doc. [3]. In the instant Motion, Defendants seek to dismiss all counts, except injurious falsehood,[7] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. [9].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for

---

[6] This claim has since been voluntarily dismissed by Plaintiff. Doc. [26].

[7] Defendants do not argue that injurious falsehood is preempted. Indeed, Defendants admit this claim has been sufficiently pleaded, as well as the relating conspiracy claim. Doc. [10] at 11.

3

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When analyzing the adequacy of a complaint, the Court must accept as true all of the complaint's factual allegations, viewed in the light most favorable to the plaintiff, and make all reasonable inferences in favor of the nonmoving party.  *Burton v. Richmond*, 276 F.3d 973, 975 (8th Cir. 2002); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–56 (2007); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly*, 550 U.S. at 556.  "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

**III.   DISCUSSION**

In support of their Motion, Defendants argue that (1) many of Plaintiff's claims are preempted by the Missouri Uniform Trade Secrets Act ("MUTSA"); (2) all of Plaintiff's claims are preempted by the Copyright Act; and (3) Plaintiff failed to sufficiently plead the elements for its claims of trade secret misappropriation (Count I) and tortious interference (Count V).  For the reasons discussed below, Defendants' arguments are unavailing.

   **1. Preemption under MUTSA**

Defendants argue that the MUTSA preempts Plaintiff's state-law claims of unfair competition (Count II), unjust enrichment (Count III), tortious interference with a business

4

expectancy (Count V), breach of duly of loyalty (Count VI), and conspiracy (Count IX).

The MUTSA "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. Federal courts in Missouri have interpreted this provision to preempt civil claims that are "derivative" of a claim of misappropriation of trade secrets. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-cv-70-CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002). The MUTSA preempts common-law claims as derivative "if they are based on facts related to the misappropriation of trade secrets claim." *Pinebrook Holdings, LLC v. Narup*, No. 4:19-cv-1562-RLW, 2020 WL 871578, at *8 (E.D. Mo. Feb. 21, 2020). "The crucial question is whether 'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret appropriation." *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08-cv-1719-JCH, 2010 WL 1691454, at *2 (E.D. Mo. Apr. 27, 2010) (internal citations omitted). In determining whether the MUTSA preempts a claim, courts must "look beyond the label of the claims to the facts being asserted in support of the claims." *Id.* at *1 (internal quotations omitted).

The Court does not find that Plaintiff's state-law claims are "derivative" of a misappropriation of trade secrets claim because Plaintiff pleads "operative facts" that go beyond misappropriation. First, Plaintiff's claim for a breach of duty of loyalty is also predicated on Defendants soliciting Plaintiff's clients to move to Defendant Omni while still employed by Plaintiff, as well as soliciting clients while working for Plaintiff to secure future work for Defendant Omni. Doc. [3] ¶¶ 37, 38, 82–83. Second, Plaintiff's conspiracy claim is also based on several unlawful acts, including Defendants allegedly exchanging emails with each other while still working at CTS outlining their plans to move business away from Plaintiff. Doc. [3] ¶ 110. Third, Plaintiff's tortious interference claim also alleges Defendants took credit for Plaintiff's

5

accomplishments and made false statements regarding Plaintiff's business to prevent Plaintiff from entering into contractual relationships with clients. Doc. [3] ¶¶ 50–51, 75, 90–91, 93–95. Fourth, Plaintiff's unfair competition claim withstands preemption for those same reasons, including taking credit for Plaintiff's "accomplishments," work, and "name," and "passing it off" as Defendants' own. *See Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012) (explaining that unfair competition consists of passing off or attempting to pass off the business of or services of one as the business of or services of another). Because all of Plaintiff's claims assert a broader claim against Defendant than improper copying of Plaintiff's confidential materials, the MUTSA does not preempt these claims.

Regardless, courts in this district and state courts in Missouri find that it would be premature to dismiss Plaintiff's claims based upon preemption because the Court has not determined as a matter of law that *all* of the underlying information, documents, processes, marketing materials, and procedures qualify as a "trade secret" under the law.[8] *See Pinebrook*, 2020 WL 871578, at *8; *CGB Diversified Servs., Inc. v. Baumgart*, 504 F. Supp. 3d 1006, 1022 (E.D. Mo. 2020) (collecting cases); *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010). As one court explained, "[w]hile determining whether something is a trade secret is a matter of law, that legal determination must be based on evidence showing that the claimed secrets meet the statutory definitions." *Design Nine, Inc. v. Arch Rail Grp., LLC*, No. 4:18-cv-428-CDP, 2019 WL 1326677, at *5 (E.D. Mo. Mar. 25, 2019); *see also Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 917 (W.D. Mo. 2010) (explaining that MUTSA preemption requires the stolen/misappropriated information to be

---

[8] Plaintiff makes the legal conclusion that CTS' proprietary and confidential information and documents, processes, marketing materials, and procedures for carrying out its business are "Trade Secrets," as a matter of law. Doc. [3] ¶ 15. However, the Court is not required to accept Plaintiff's "conclusory allegation" as true. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

a trade secret). Thus, until the Court makes that legal determination, it would be premature for the Court to find that the MUTSA preempts Plaintiff's state law claims.

### 2. Preemption Under the Copyright Act

Next, Defendants argue that all of Plaintiff's claims are preempted by the Copyright Act because the claims are "derivative" of Plaintiff's copyright infringement claim.[9] The Copyright Act preempts certain state-law claims. *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142 (8th Cir. 2015); *see also* 17 U.S.C. § 301(a).[10] The Copyright Act preempts a state-law claim if two conditions are satisfied: (1) the work at issue is within the subject matter of copyright as defined by §§ 102 and 103 of the Copyright Act, and (2) the state law right is equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 of the Copyright Act. *Ray*, 783 F.3d at 1142. In determining whether the rights at issue are "equivalent," a court must determine whether there is an "extra element" that changes the nature of the state law action so that it is "*qualitatively* different from a copyright infringement claim." *Huckshold v. HSSL, L.L.C.*, 344 F. Supp. 2d 1203, 1206–07 (E.D. Mo. 2004) (quoting *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)); *see also Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431 (8th Cir. 1993) ("If an extra element is 'required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright' and there

---

[9] For reasons discussed in the Opinion, the Copyright Act does not preempt the underlying torts; thus, the Court will not dismiss Plaintiff's conspiracy claim or undergo a separate analysis. *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well."); *see also Dutch Jackson IATG, LLC v. Basketball Mktg. Co.*, 846 F. Supp. 2d 1044, 1051 (E.D. Mo. 2012) (preempting "civil conspiracy claim [because it] does not allege any underlying tort or wrong that is qualitatively distinct from their already-stated copyright claims").

[10] The Copyright Act provides that federal copyright law preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright." *Dryer v. Nat'l Football League*, 814 F.3d 938, 942 (8th Cir. 2016) (quoting 17 U.S.C. § 301(a)).

7

is no preemption.'"). Plaintiff brings all its common law claims under Missouri state law, and the Court will address each in turn.

### i. Tortious Interference

The Copyright Act preempts tortious interference claims if they are not qualitatively different from the rights protected by copyright. *See Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 n.2 (8th Cir. 2015). Here, Plaintiff's tortious interference claim is grounded in allegations beyond mere copying. Plaintiff alleges that Defendants disparaged Plaintiff's business and reputation with false statements in order "to harm the business interests of [Plaintiff] and drive customers and clients to Defendants" and pursued several of Plaintiff's employees, clients, and business opportunities while still working for Plaintiff and also after shortly leaving CTS. Doc. [3] ¶¶ 90–91, 93–95. Therefore, because Plaintiff's tortious interference claim does not solely rely on allegations of use and copying Plaintiff's work, it is "qualitatively different" than a copyright claim and thus, not preempted.[11]

### ii. Unfair Competition

Although the Eighth Circuit has not yet considered whether the Copyright Act preempts a Missouri or other state-law claim for unfair competition, several other Circuits as well as district courts sitting in the Eighth Circuit have considered this issue. *See e.g., Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 247 (2d Cir. 1983) (finding the Copyright Act does not preempt a state unfair competition claim based on "passing off" because that right is not equivalent to those protected by copyright); *Wolff Shoe Co. v. Mosinger Co., LLC*, No. 4:11-cv-6010-TIA, 2012 WL

---

[11] Also, as part of its tortious interference claim, Plaintiff alleges that "Defendants intended to prevent CTS from entering into contractual relationships with the third-party clients." Doc. [3] ¶ 75. Generally, a tortious interference claim is not preempted by the Copyright Act when it is based on allegations that the defendant induced a third party to breach a contract with the plaintiff. *Dutch Jackson IATG, LLC v. Basketball Mktg. Co.*, 846 F. Supp. 2d 1044, 1050 (E.D. Mo. 2012); *Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC*, 780 F. Supp. 2d 916, 922–23 (E.D. Mo. 2011). (preempting a tortious interference claim based on the Copyright Act, in part, because "plaintiffs' claim is not based upon allegations that the defendants caused a third-party to breach its contract with the plaintiffs").

1033364, at *7 (E.D. Mo. Mar. 27, 2012) (same); *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1024 (D. Minn. 2014) ("As with other state law claims, claims for unfair competition are preempted by the Copyright Act to the extent they are 'based upon acts of copyright infringement.'"). Based on those decisions as well as the principles underlying copyright preemption and unfair competition, the Court concludes that Plaintiff's claim as alleged withstands preemption.

Missouri courts have described the tort of unfair competition as a "reaffirmation of the rule of fair play" and a protection against companies deceiving the public. *Tension Envelope Corp. v. JBM Envelope Co.*, 876 F.3d 1112, 1121 (8th Cir. 2017). Unfair competition imposes liability for harm to another's commercial relations where the party engages in certain deceptive practices, including deceptive marketing. *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012). Deceptive marketing includes "one who advertises goods or services in a way likely to deceive or mislead prospective patrons to the commercial detriment of another is subject to liability for such deceptive practices." *Vinson*, 371 S.W.3d at 64. This is exactly what Plaintiff pleaded here—that Defendants engaged in several "false and misleading" acts to mislead consumers and drive them to Defendants, and also to harm Plaintiff. Doc. [3] ¶¶ 61, 95. Specifically, Plaintiff alleges that Defendants made several false statements and misrepresentations about Plaintiff to deceive clients as to the status of Plaintiff's business, employees, and abilities. *See Am. Traffic Sols., Inc. v. B & W Sensors, LLC*, No. 4:13-cv-229-AGF, 2014 WL 1272509, at *8 (E.D. Mo. Mar. 27, 2014) (finding allegations that defendant's false representations were made to gain a competitive advantage over plaintiff provide a sufficient cause of action for unfair competition). Also, Plaintiff alleges that Defendants unfairly represented Plaintiff's work as their own work in order to deceive consumers as to Defendants' work. *See,*

9

*e.g.*, Doc. [3] ¶ 90–91 ("Defendants have told [Plaintiff's] customers that certain projects were conducted by Defendants, which are false"). Further, Defendants allegedly "palm[ed] off" Plaintiff's "good name and accomplishments," thereby deceiving the public. *Id.* ¶ 116. Further, Plaintiff alleges Defendants used Plaintiff's "marketing" in an effort to "pass off" Plaintiff's services as their own. *Am. Broad. Cos.*, 720 F.2d at 247 (finding no preemption of a state unfair competition claim under the Copyright Act alleging a tort of "passing off" because those rights are not equivalent to those protected by copyright); *see also Design Nine*, 2019 WL 1326677, at *9 ("To establish an unfair competition claim, a party is shown as 'passing off' a product as that of another, thereby deceiving the public."). This tort's emphasis on deception and protection of the *public* drastically differs it from a copyright claim. *Compare Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (discussing the Copyright Act's monopoly on and purpose of protecting the author's original works), *with Tension Envelope*, 876 F.3d at 1121 (explaining that the tort of unfair competition protects against companies deceiving the public). *See also Dryer v. Nat'l Football League*, 814 F.3d 938, 942–43 (8th Cir. 2016) ("the Supreme Court has recognized that the purpose of copyright protection is to 'suppl[y] the economic incentive to create and disseminate ideas.'" (quoting *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 558 (1985)). Therefore, Plaintiff's unfair competition claim is "qualitatively different" than a copyright claim and is not preempted.

### iii. Breach of Duty of Loyalty

The Eighth Circuit has not yet considered whether the Copyright Act preempts a state-law claim for breach of loyalty, and the Court lacks clear precedent on that question. However, the nature of the action and Plaintiff's allegations show that the Copyright Act does not preempt Plaintiff's claim.

10

Indeed, both the Copyright Act and duty of loyalty protect the unlawful distribution of confidential information. *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 480 (Mo. banc 2005) (explaining that a breach of loyalty occurs if one uses confidential information peculiar to his employer's business and acquired therein). But several "extra element[s]" of the duty of loyalty changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim. *See Huckshold*, 344 F. Supp. 2d at 1206–07. It is "well settled" law that an employee owes a duty of loyalty to his employer that he must not, while employed, "act contrary to the employer's interests."[12] *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 41 (Mo. banc 1966). Conduct that breaches the duty of loyalty includes engaging in direct competition, soliciting customers for a rival company (especially before the end of employment), using confidential information unique to or acquired from the employer, acting contrary to the employer's interest, or other acts that result in direct competition. *See W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 17 (Mo. banc 2012); *Scanwel*, 162 S.W.3d at 479.

Here, Plaintiff's claim for breach of duty of loyalty alleges that Defendants—*all while still working as employees of Plaintiff*—(1) solicited Plaintiff's employees and clients to move to Defendant Omni, (2) "purposely moved business to Defendant Omni," (3) disadvantaged Plaintiff's business in order to secure future work for Defendant Omni, and (4) prepared for Defendant Omni's business ventures while using CTS's resources. Doc. [3] ¶¶ 37, 38, 82–83, 85, 87, 110. Plaintiff also alleges that Defendants took actions to directly compete with CTS by "misappropriating" confidential and proprietary materials, while still employed by Plaintiff, and used that information to the detriment of Plaintiff's relationships with its clients and to Defendants' overall economic advantage. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 954 (8th Cir. 2007) (finding

---

[12] Defendants were employees of Plaintiff. Under Missouri law, every employee owes his or her employer a duty of loyalty. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012).

employees breached duty of loyalty under Missouri law by forming a competing company while still employed and using employer's trade secrets, confidential information, pricing and product information, and targeting customers); *Scanwell*, 162 S.W.3d at 479 (breaching the duty of loyalty when "the employee goes beyond the mere planning and preparation and actually engages in direct competition, which, by definition, is to gain advantage over a competitor."). The gravamen of Plaintiff's claim is based on allegations that Defendants owed Plaintiff a duty of loyalty and breached that duty after allegedly committing several wrong acts. Thus, Plaintiff's duty of loyalty claim is "qualitatively different" than a copyright claim and is therefore not preempted.

### iv. Trade Secret Misappropriation

The Copyright Act preempts a misappropriation claim if it is "basically a reformulation" of a copyright claim. *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 121 (8th Cir. 1987). Plaintiff alleges Defendants "misappropriated CTS's Trade Secrets," Doc. [3] ¶ 56, which ordinarily acts as an "equivalent" to a right under the Copyright Act thus, triggering preemption. However, Plaintiff's allegations that the proprietary and confidential information, documents, processes, marketing materials, and procedures are "Trade Secrets," Doc. [3] ¶ 15, is a legal conclusion, one that the Court need not accept as true. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Rather, as previously discussed, whether Plaintiff's materials are "trade secrets" by law is based on evidence—not the pleadings. *Design Nine*, 2019 WL 1326677, at *5; *Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 776 (Mo. Ct. App. 2009) ("Evidence of purported trade secrets must be sufficiently specific to allow a court to make a determination."); *State ex rel. Coffman Grp., L.L.C. v. Sweeney*, 219 S.W.3d 763, 769 (Mo. Ct. App. 2005) (determining whether information is a "trade secret" depends on several factors and is a conclusion of law based on the applicable facts). Thus, the Court does not find it

appropriate at this stage of the litigation to determine whether the "misappropriated" materials qualify as a "trade secret" as a matter of law. This determination is better suited for summary judgment. *Id.*

### v. Unjust Enrichment

The Copyright Act typically preempts unjust enrichment claims when the claim is based upon violation of rights protected by the Copyright Act.[13] *Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC*, 780 F. Supp. 2d 916, 923 (E.D. Mo. 2011). Especially when the "gist of [Plaintiff]'s unjust enrichment claim is the defendant's unauthorized use" of Plaintiff's materials. *Id.* While it is true that the "gist" of Plaintiff's unjust enrichment claim is centered around Defendants misappropriating Plaintiff's materials,[14] Doc. [3] ¶ 69, as already discussed, the Court does not find it appropriate at this stage of litigation to determine whether *all* of the information, documents, processes, marketing materials, and procedures are a "trade secret" or "copyright" as a matter of law.

### vi. Temporary Restraining Order and Preliminary and Permanent Injunction

Plaintiff requests injunctive relief to enjoin (1) Defendants' misappropriation of CTS Trade Secrets, (2) Defendants from "passing off" CTS's name and accomplishments as Defendants own, (3) Defendants continued publication of false statements, and (4) Defendants' use of CTS's copyrighted materials. Doc. [3] ¶¶ 118–119. Defendants argue that the Copyright Act preempts

---

[13] Although the Eighth Circuit has not expressly yet ruled on whether the Copyright Acts preempts unjust enrichment claims, this Court joins the majority of courts that have addressed the issue and concludes that state-law unjust-enrichment claims are preempted by the Copyright Act where unjust enrichment claims are based upon the violation of rights protected by the Copyright Act, [and] they 'sound [] squarely in copyright infringement'" *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1025 (D. Minn. 2014) (collecting cases).

[14] In the Complaint's Unjust Enrichment section, Plaintiff pleads that "CTS provided and/or conferred to the individual Defendants a benefit in the form of the use of the aforementioned information of CTS for use in their employment with CTS," Doc. [3] ¶ 67, and that defendants "misappropriated and used [that information] for their own." *Id.* ¶ 69. However, whether *all* the "information" constitutes trade secrets is inappropriate to determine at this stage in the litigation.

Plaintiff's request because the Copyright Act *itself* provides injunctive relief. *See* 17 U.S.C. § 502(a). However, as stated above, Plaintiff seeks injunctive relief based on several basses—ones that the Copyright Act does not preempt, as discussed above. *WJ Glob. LLC v. Farrell*, 941 F. Supp. 2d 688, 694 (E.D.N.C. 2013) (finding that if claims are preempted by the Copyright Act, a request for an injunction would also be barred). Thus, at the very least, three of Plaintiff's four bases for injunctive relief withstands this motion to dismiss. Defendants cite no authority, and the Court finds none, barring injunctive relief as a whole when the relief sought contains claims the Copyright Act does not preempt. Thus, because most of Plaintiff's requested relief is not premised on the "the mere act of reproduction, performance, distribution or display" of Plaintiff's work, an injunction is not equivalent to the exclusive rights of copyright and thus, are not preempted. *Nat'l Car Rental*, 991 F.2d at 431.

### 3. Trade Secret Misappropriation

Defendants argue that Plaintiff failed to plead that Defendants misappropriated any "trade secret." MUTSA prohibits the use of a trade secret by another who obtained the trade secret through improper means. Mo. Rev. Stat. § 417.453. To bring a claim under MUTSA, a plaintiff must show: "(1) a trade secret exists, (2) the defendant[s] misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." *Cent. Trust. & Inv. Co. v. Signalpoint Asset Mgmt. LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014) (en banc) (citing Mo. Rev. Stat. §§ 417.453, 417.455). To support their argument that alleged misappropriated materials are not trade secrets, Defendants point to a MUTSA definition in Mo. Rev. Stat. § 417.453(4) and argue that Plaintiff's bidding materials are public records and thus Plaintiff cannot demonstrate its materials are "not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use" as required by Missouri law.

Defendants overstate and misapply the law. The MUTSA states that a trade secret derives its value from not being readily ascertainable. Mo. Rev. Stat. § 417.453(4). "Absolute secrecy is not required" by MUTSA. *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011) (analyzing the MUTSA); *Wyeth v. Nat. Biologics, Inc.*, 395 F.3d 897, 900 (8th Cir. 2005) (applying the Minnesota Uniform Trade Secrets Act's identical definition of trade secrets). Rather, all that is required is that the party take "reasonable" efforts to protect the confidentiality of putative trade secrets.[15] *See Surgidev Corp. v. Eye Tech., Inc.*, 828 F.2d 452, 455 (8th Cir. 1987) ("Only reasonable efforts, not all conceivable efforts, are required to protect the confidentiality of putative trade secrets.") (citing Uniform Trade Secrets Act ("UTSA") § 1(4)(i)-(ii), 14 U.L.A. 542 (1980)); *Wyeth*, 395 F.3d at 900; *AvidAir*, 663 F.3d at 972–75. Taking the allegations as true, Plaintiff sufficiently pleads that it takes reasonable efforts to protect CTS's proprietary and confidential information, such as using password protected software and network servers, using non-disclosure agreements with employees and partner contractors or subcontractors, locking and alarming facilities during non-business hours, and adopting employee policies and practices related to maintaining and protecting proprietary and confidential information. Doc. [3] ¶ 19. And while at times, CTS's proprietary and confidential marketing materials and documents are shared with other parties, those parties must sign confidentiality agreements. *Id.* ¶¶ 16-17. Additionally, when "slides and other proprietary information are provided to CTS's clients [] during a presentation," upon conclusion, the materials are returned to CTS. *Id.* ¶ 18. The fact that part of Plaintiff's bidding materials were made publicly available does not negate Plaintiff's attempts to keep that information secret. *See, e.g., AvidAir*, 663 F.3d at

---

[15] For information to qualify as a trade secret, the owner must take "reasonable" efforts to keep such information secret. Mo. Rev. Stat. § 417.453(4).

974–75;[16] *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 819 (8th Cir. 2004) (holding information, though partially based on publicly available information, constituted "trade secrets" under Missouri law).  At this stage in the proceedings, the mere fact that *portions* of Plaintiff's bidding materials were made public is not enough to show as a matter of law that Plaintiff failed to take reasonable steps to protect its alleged trade secrets.[17]  However, discovery may show a different story and can shed light on how much of the information is public and whether there remains a competitive advantage based on publication.  *Twombly*, 550 U.S. at 556 (explaining that the motion to dismiss standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]".  Therefore, Plaintiff has stated a plausible claim for misappropriation of trade secrets under Missouri law.[18]

### 4. Tortious Interference

In the absence of preemption, Defendants argue Plaintiff's claims for tortious interference with a business expectancy (Count V) should be dismissed.  To state a claim for tortious interference under Missouri law, plaintiffs must show: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's

---

[16] Defendants' attempt to distinguish this case, at this stage in litigation, is unavailing.  Doc. [15] at 4.  Especially because under Missouri law, a lack of confidentiality agreements does not show as a matter of law that Plaintiff failed to take reasonable steps to protect its alleged trade secrets.  *Lyn-Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 699 (Mo. Ct. App. 1999) ("While the existence of a confidentiality . . . may be further evidence of the [trade secret]'s confidentiality, the lack of such agreement[] is not conclusive . . . .").

[17] The Court also notes that Defendants' argument only relates to some, but not all, of the materials at issue, because only portions of the supposed "trade secrets" were submitted to the "public."

[18] And if Plaintiff's allegations—that Defendants obtained Plaintiff's propriety information, copied it while still employed at Plaintiff, and now using them in conjunction with their new competing business—of misappropriation are true, the fact that additional materials of Plaintiff are now "public," based on Defendants' wrongdoing, does not render Plaintiff's information not a trade secret.  *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011) (citing *N. Elec. Co. v. Torma*, 819 N.E.2d 417, 428 (Ind. Ct. App. 2004)) (misplaced trust in a third party who breaches a duty of confidentiality does not necessarily negate efforts to maintain secrecy."); *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 ("This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in confidence, and under an implied obligation not to use or disclose it." (internal quotation marks omitted)).

16

intentional interference; (4) absence of justification; and (5) damages. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006).  Defendants argue that Plaintiff failed to allege an absence of justification for its tortious interference claim.  Specifically, that Plaintiff failed to plead the absence of a legal right (*i.e.*: lack of a justification) for submitting Defendant Omini's bids for school contracts.  *Id.* at 252 ("No liability arises for interfering with a . . . business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification.").

If a defendant has a legal right to act—a legitimate interest, economic, or otherwise—then the plaintiff must show that the defendant employed "improper means" in seeking to further only his own interests.  *Stehno*, 186 S.W.3d at 252.  "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."  *Id.*  Here, Plaintiff pleaded that Defendants employed improper means.[19]  Plaintiff alleges Defendants made several false statements and misrepresentations about Plaintiff's business, employees, and abilities, as well as misrepresented Plaintiff's work and accomplishments as their own.  Defendants also allegedly siphoned off business, clients, and employees from Plaintiff, while still working for Plaintiff, all for their own economic interests.  *Id.* ("Even if there is an economic justification for interfering with a business expectancy, the interfering party must not employ improper means.").  Plaintiff further alleges Defendants engaged in these acts, and several others, with an "evil motive." *Stehno*, 186 S.W.3d at 253 (finding that if there is a legal right to act, the plaintiff must plead and prove

---

[19] For the sake of analysis, the Court assumes Defendants had a legal right to act.  The Court notes, however, that Defendants may not of had a "legal right" to act because Plaintiff requires employees to sign non-disclosure agreements.  This determination, however, is inappropriate at this stage because the Court will need to look at evidence of the agreement and also the employment contract to determine Defendants' rights and obligations and whether Defendants were constricted in acting in the way that they did.  *See e.g., Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, 918 F. Supp. 2d 916 (E.D. Mo. 2013) (finding no justification when employee violates restrictive covenants in employment agreement).

17

that the defendant employed improper means or acted out of "personal animus").  Based on Defendants alleged "improper means," and plausible "personal animus," the Court concludes that Plaintiff sufficiently alleged the fourth element of a tortious inference claim—absence of justification.[20]  Thus, Plaintiff has stated a plausible claim for tortious interference under Missouri law.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [9], is **DENIED**.

Dated this 21st day of December, 2021.

MATTHEW T. SCHELP

---

[20] Indeed, Defendants do not argue that they did not engage in improper means or contest any of the other alleged "improper" actions.  Rather, Defendants entire argument is premised on Plaintiff's alleged failure to plead a lack of a justification for submitting bids.  Doc. [10] at 7.